In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1904

ALBERT KIRKMAN,

*Petitioner-Appellant*,

*v.*

SCOTT THOMPSON,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 02398 — **Thomas M. Durkin**, *Judge.*

ARGUED JANUARY 15, 2020 — DECIDED MAY 7, 2020

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Albert Kirkman ("Kirkman") was arrested and charged with the murders of two men and attempted murder of a third, Willie Johnson ("Johnson"). At trial, Johnson testified that Kirkman and his accomplice were the shooters. Kirkman was convicted and appealed his sentence. Fifteen years later, Johnson recanted his testimony and

Kirkman again appealed his sentence. The Illinois Circuit
Court ("circuit court") held an evidentiary hearing and found
Johnson's recanted testimony not credible. The Illinois Appel-
late Court affirmed. Kirkman then filed an action with the
Northern District of Illinois, which denied his petition for
habeas corpus relief and for the following reasons, we affirm.

## I.  BACKGROUND

On April 21, 1992, a fight broke out among various individ-
uals involving Johnson, who was soon assisted by Cedric
Herron and Sammie Walker, breaking up the altercation. Later
that night, two shooters shot Johnson, Herron, and Walker,
and only Johnson survived. While in the hospital, Johnson
described the events to detectives including describing the
shooters, identifying one by the street name "Duke," where
Duke lived, and the car Duke drove. Later that day, detectives
presented Johnson with a photo array and Johnson identified
Duke and his accomplice. Police pulled over a vehicle match-
ing Johnson's description and arrested the driver, Kirkman,
and the passenger, who matched the general description of the
second shooter, Cedric Cal. Kirkman denied having a street
name but stated he "had a tattoo of Duke on his left arm."
Police took additional photos and presented a second photo
array to Johnson, who identified them as the shooters.

At trial, Johnson identified Kirkman and Cal as the shooters
that had been part of the earlier altercation. On cross-examina-
tion, he denied that the altercation involved a drug dispute and
maintained the fight started when he confronted another
man, Keith Ford, about his sister, Latanya Johnson. Johnson's
girlfriend, Latrese Buford testified for the defense. She testified

the altercation was over a drug sale and that Herron was infringing on Ford's turf. She heard but did not witness the gunshots later that evening. The jury found Kirkman guilty of murder and aggravated battery with a firearm. Kirkman was sentenced to life in prison without parole.

Johnson had a change of heart and submitted an affidavit identifying Keith Ford and an unknown man as the shooters. He stated that Kirkman and Cal sold drugs in front of his house the day before the shooting and he confronted and robbed them. He indicated Kirkman and Cal were his enemies and he had falsely identified them because he was afraid of Ford. Johnson testified that he and his family received threatening calls.

At Kirkman's post-conviction hearing, Johnson testified that his affidavit was true and the circuit court questioned him about his change of heart. Buford also testified at the hearing, but her testimony was inconsistent with Johnson's. For example, Johnson told her the shooters were Kirkman and Cal in the emergency room, she did not see Johnson receive any telephone calls in the emergency room and testified no telephones were in the emergency room, only in the admitted hospital room. The State's Attorney Investigator also testified that when she interviewed Johnson in 2010, his information matched that of his affidavit but did not exclude Kirkman or Cal as the unknown second shooter.

The circuit court denied the petition for post-conviction relief, finding that Johnson's recantation lacked credibility. Not only did his testimony present conflicting accounts of that

night, but also the emergency room where he testified to receiving calls lacked a telephone.

On appeal, the Illinois Appellate Court affirmed on all grounds, finding the recantation unreliable because it contained inconsistencies and was implausible. Johnson later pleaded guilty for perjury, but failed to specify which statement was false.

Kirkman brought a federal due process claim, claiming his conviction was based solely on Johnson's unreliable testimony, his recantation was credible, that the state court made an unreasonable determination of fact, and the clear and compelling evidence of Kirkman's innocence affords him habeas corpus relief.

## II. DISCUSSION

We review the district court's denial of a habeas petition *de novo. Berry v. Knight*, 770 Fed. Appx. 265, 266 (7th Cir. 2019).

Habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or … based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Shoop v. Hill*, 139 S.Ct. 504, 506 (2019). A decision is reasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court's factual determination is

presumed correct and the petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In light of the evidence presented in the circuit court's evidentiary hearing, the circuit court made a reasonable determination of fact in finding Johnson's recanted testimony not credible. This factual determination is presumed correct unless rebutted by clear and convincing evidence. Here, Kirkman fails to show clear and convincing evidence that the recantation fifteen years after the trial is true. Further, he concedes that no evidence exists to show that the State was aware of the claimed perjury.

Furthermore, the Illinois Appellate Court held that the circuit court properly considered six factors in assessing the credibility of Johnson's recantation: "(1) the recantations' internal consistency and inherent plausibility; (2) the plausibility of the recanter's motive for perjuring himself at trial; (3) the plausibility of the recanter's motive for stepping forward now; (4) whether the recantation is against his interest; (5) the importance of the recanted testimony to the original guilty verdict; and (6) whether other evidence supports or contradicts the recantation." *People v. Kirkman*, 2013 IL App (1st) 112362-U, ¶13 (Ill. App. Ct. 2013) (unpublished decision) (internal citations omitted). The Illinois Appellate Court also found that, along with these factors, the circuit court observed Johnson's demeanor and "concluded that the new evidence was not material and would probably not change the result on trial." *Id.* at ¶14. The Illinois Appellate Court affirmed the circuit court's finding that "Johnson's recantation was not credible because: (1) Johnson's recantation was internally inconsistent and implausible; (2) Johnson had no motivation to lie at trial; and

(3) Johnson recanted out of allegiance to the Vice Lords and not out of reasons related to justice." *Id.* at 17. The circuit court's determination was not unreasonable in light of the evidence. *See Morgan v. Hardy*, 663 F.3d 790, 798 (7th Cir. 2011) (affirming denial of habeas relief where state courts reasonably found that key prosecution witness's recantation of trial testimony was not credible).

Kirkman also claims clear and compelling evidence of his actual innocence exists. Our system begins with a presumption of innocence that continues until a defendant "has been afforded a fair trial and convicted of the offense for which he was charged, [then] the presumption of innocence disappears." *Herrera v. Collins*, 506 U.S. 390, 399 (1993). The prosecution met its burden beyond a reasonable doubt and Kirkman comes to us "as one who has been convicted by due process of law." *Id.* at 400. While Illinois allow motions for a new trial, the circuit court is the proper venue to decide this claim. In 2011, the circuit court conducted the evidentiary hearing and concluded the recantation was not credible and a new trial was not warranted. The appellate court affirmed this decision. That creates a non-cognizable issue of state law, so we move on to consider Kirkman's due process claims.

Kirkman argues his due process rights were violated because his conviction was based on recanted and perjured trial testimony. Kirkman claims that his conviction rests solely on Johnson's testimonial evidence, which has been "credibly and consistently" recanted. While Johnson may adhere to his recantation, his credibility and consistency remain in dispute. When trying the case, the prosecution had no reason to know or suspect Johnson's testimony was anything other than

truthful. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Even if the recantation passed muster with the state courts, perjured testimony unknowingly presented does not violate due process.

The circuit court, as affirmed by the Illinois Appellate Court, found Johnson's recantation lacked credibility. Its evidentiary hearing satisfied Kirkman's due process rights. Kirkman fails to overcome this finding with clear and convincing evidence. We agree with the district court that the circuit court's determination, as affirmed in appellate review, defeats Kirkman's innocence and perjured testimony claims.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to deny habeas corpus relief.